UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAELA HENDERSON                                          CIVIL ACTION

VERSUS                                                                      NO. 24-750

FIVE PROPERTIES LLC AND                                SECTION "R" (4)
SUZANNE TONTI


**ORDER AND REASONS**

Defendants Five Properties, LLC, Suzanne Tonti, and APMT Management Services, LLC move for summary judgment dismissing plaintiff Michaela Henderson's reasonable accommodation claim under the Fair Housing Act and the Louisiana Equal Housing Opportunity Act.[1] Defendants also move for summary judgment on their breach of contract claims against plaintiff.[2] Plaintiff opposes the motion.[3] For the following reasons, the Court grants defendants' motions for summary judgment on plaintiff's reasonable accommodation claim, and dismisses the remaining state-law claims without prejudice.

---

[1]    R. Docs. 69 & 36.
[2]    R. Docs. 69.
[3]    R. Doc. 79 & 38.

## I.    BACKGROUND

The Court has reviewed the record and determined the facts are as follows.  In July 2022, plaintiff Michaela Henderson applied to lease an apartment at AlmondTree Apartments in Harahan, Louisiana, which is owned by Five Properties and managed by Suzanne Tonti and APMT Management Services, LLC.[4]  In the application, Henderson stated that she had a dog named Tydus.[5]  Henderson entered a lease to live at Almondtree Apartments through November 30, 2023, and paid a nonrefundable animal fee of $350.[6]

In November 2023, Henderson inquired about moving into another one of Five Properties' apartment complexes managed by defendants, Sunlake Apartments.[7]  As part of the application, Henderson requested that the nonrefundable $400 animal fee be waived because of Tydus's emotional support animal ("ESA") status.[8]  In support of this request, Henderson noted in her application that Tydus keeps her calm and stable, that he has documentation, and that she is getting more documentation in December.[9]

---

[4]    R. Doc. 69-6 at 1, 4; R. Doc. 79-2 at 1, 3.
[5]    R. Doc. 69-6 at 4; R. Doc. 79-2 at 3.
[6]    R. Doc. 69-6 at 4; R. Doc. 79-2 at 3.
[7]    R. Doc. 69-6 at 6; R. Doc. 79-2 at 4.
[8]    R. Doc. 38-3 at 3; R. Doc. 26-2 at 3.
[9]    R. Doc. 26-8 at 2; T. Doc. 69-6 at 6; R. Doc. 79-2 at 4.

On December 26, 2023, Henderson submitted a letter from Steph Lee, an advance practice registered nurse ("APRN"), who stated that Henderson meets the federal criteria to request a reasonable accommodation of being accompanied by her ESA.[10]  Specifically, Lee found that Henderson has a mental/emotional condition recognized in the Diagnostic and Statistical Manual of Mental Disorders that caused disability as defined by the Americans with Disabilities Act, and that Henderson needs to have her ESA accompany her to provide relief from symptoms from her mental/emotional disability.[11]

Shortly after receiving the letter, Tonti notified Henderson that Tydus could live with her if she paid the nonrefundable animal fee, but she had not provided sufficient information to demonstrate she could not enjoy the use of the apartment without a waiver of the animal fee.[12]  Tonti noted that the records Henderson provided indicated that she had sufficient income to pay the fee.[13]

An attorney for Tonti Management sent Henderson a letter on January 4, 2024, communicating Tonti Management's denial of the $400 animal fee

---

[10]    R. Doc. 26-9; R. Doc. 69-6 at 9; R. Doc. 79-2 at 5.
[11]    R. Doc. 26-9
[12]    R. Doc. 26-2 at 4; R. Doc. 38-3 at 3.
[13]    R. Doc. 26-2 at 4; R. Doc. 38-3 at 3.

waiver.[14]   He noted that the Lee letter did not provide sufficient reliable information that Henderson is disabled or that there is a nexus between the supposed disability and the dog such that the animal is required.[15]   Further, he stated that there is no indication that Henderson cannot equally use and enjoy the apartment without waiver of the fee because her financial information indicates she has adequate income to pay the $400 fee.[16]   On January 9, 2024, Henderson canceled her Sunlake Apartments application.[17] On March 25, 2024, Henderson filed suit under the Fair Housing Amendments Act ("FHAA"), and the Louisiana Equal Housing Opportunity Act seeking a declaratory judgment, a permanent injunction, and general, specific, and punitive damages.[18]   In defendants' answer, they made a counterclaim against plaintiff for breach of contract arising out of alleged unpaid rent and damages caused by plaintiff's dog.[19]

Defendants now move for summary judgment on plaintiff's reasonable accommodations claims, asserted under 42 U.S.C. § 3604(f)(3)(b) and La.

---

[14]   R. Doc. 26-10.
[15]   *Id.*
[16]   *Id.*
[17]   R. Doc. 69-6 at 10; R. Doc. 79-2 at 6.
[18]   R. Doc. 1 at 5–7.
[19]   R. Doc. 11 at 9–13

Rev. Stat. § 51:2606(A)(6)(a)(ii).[20]    Additionally, defendants move for summary judgment on their breach of contract claim.[21]

The Court considers the motion below.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for

---

[20]    R. Doc. 69.
[21]    *Id.*

summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (noting that the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" (citations omitted)). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party must put forth evidence that would "entitle it to a [judgment as a matter of law] if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991) (internal quotation marks omitted)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

6

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

### A. Plaintiff's Claims

Under the Fair Housing Amendments Act ("FHAA") and the Louisiana Equal Housing Opportunity Act ("LEHOA"), it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a" disability of "a person residing in or intending to reside in that dwelling." 42 U.S.C. § 3604(f)(1)(B); La. Rev. Stat.

§ 51:2606(A)(6)(a)(ii).  In both statutes, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B); La. Rev. Stat.  § 51:2606(A)(6)(c)(ii).    When, as here, the applicable LEHOA provisions mirror those in the FHAA, courts in the Fifth Circuit apply the same analysis to both claims.  *See Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F. Supp.3d 635, 648 n.90 (E.D. La. 2019) ("Because the language in the relevant sections of the FHA and Louisiana Equal Housing Opportunity Act are nearly identical, the Court's analysis of plaintiff's FHA claims applies with equal force to its claims under the state statute."); *Pecan Acres Ltd. P'ship I v. City of Lake Charles*, 54 F. App'x 592, *1 (5th Cir. 2002) (holding that for the same reasons plaintiff failed to prove a violation of the FHAA, plaintiff also failed to prove a violation of the LEHOA); *Edwards v. St. John Baptist Par.*, 2010 WL 3720436, at *5 n.2 (E.D. La. Sept. 9, 2010) (same); *Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 2019 WL 9903799, at *2 n.11 (E.D. La. Oct. 23, 2019) (applying the same analysis when the plaintiff's "claims under the Louisiana Equal Housing Opportunity Act . . . has provisions mirroring the Fair Housing Act"); *Osborne v. Belton*, 2022 WL 3093765, at *6 (W.D. La. Aug. 3, 2022) (same).

8

The plaintiff bears the burden of proving a violation. *Women's Elevated Sober Living L.L.C. v. City of Plano, Texas*, 86 F.4th 1108, 1112 (5th Cir. 2023) (citing *Elderhaven, Inc. v. City of Lubbock*, 98 F.3d 175, 178 (5th Cir. 1996)). In a failure-to-accommodate claim, a plaintiff must demonstrate that (1) the residents of the affected dwelling or home suffer from a disability, (2) they requested an accommodation from the defendant, (3) the requested accommodation was reasonable, and (4) the requested accommodation was necessary to afford the residents equal opportunity to use and enjoy the home. *Id.* (citing *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018)).

A generally applicable fee, like the one at issue here, is not *per se* valid simply because it is generally applicable. "[T]o exempt generally applicable fee rules from scrutiny under the FHAA would permit landlords to circumvent the Act's requirements simply by imposing fees for certain matters, rather than by imposing flat bans or other types of restrictive rules." *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1417 (9th Cir. 1994) ("*California Mobile Home Park Mgmt. Co. I*"). Generally applicable fees may, but do not automatically, unfairly burden disabled tenants. *Id.* ("There are, of course, many types of residential fees that affect handicapped and non-handicapped residents equally; such fees are clearly

proper.  Fees that merit closer scrutiny are those with unequal impact, imposed in return for permission to engage in conduct that, under the FHAA, a landlord is required to permit.").  The inquiry to determine if the generally applicable fee does so is "highly fact-specific, requiring case-by-case determination."  *Id.* at 1418.  The analysis also requires the court to balance the needs of the parties.  *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002).

To prove that an accommodation is necessary, the fourth element, courts require that the plaintiff prove the requested accommodation makes the home therapeutically meaningful or financially viable.  *Women's Elevated Sober Living L.L.C.*, 86 F.4th at 1112 (citing *Bryant Woods Inn v. Howard County*, 124 F.3d 597, 605 (4th Cir. 1997)).  Courts consider necessity "(1) in light of the statutory provision's language; (2) in accord with the purpose of the FHA and ADA, to ameliorate the plaintiff's particular disability; and (3) in the light of 'proposed alternatives.'"  *Id.* at 1112 (citing *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018)).  But a preferable accommodation or alternative is not sufficient—it must be essential.  To be therapeutically necessary, an accommodation be "[i]ndispensable, requisite, essential, needful; that cannot be done without, or absolutely required."  *Id.* (citing *Vorchheimer*, 903 F.3d at 105).  The

accommodation must be so necessary and so closely linked to the individual's disability that "without the requested accommodation, the ameliorative benefit provided [would] be so insignificant that it deprives persons with disabilities from the opportunity to use and enjoy the dwelling of their choice as compared to those without disabilities." *Id.* "A requested accommodation is necessary only if the plaintiff shows that without the requested accommodation, they will receive no ameliorative effect from their disability, thereby depriving them of the equal opportunity to enjoy the dwelling." *Id.* at 1113.

Therefore, to succeed on this prong, plaintiff must show that her requested accommodation, the waiver of the animal fee, is indispensable and essential to achieve ameliorative effects of her disability. Plaintiff fails to do so. Plaintiff puts forward no evidence to demonstrate that waiving the fee would alleviate any effects of her disability. The letter from Lee adequately establishes that Henderson has a recognized disability and that her pet provides relief from symptoms from that disability. But her having the animal is not at issue; defendants allow animals in the apartment. The indispensable nature of the fee waiver is at issue. The evidence in the record establishes that a proposed alternative, a payment plan for the animal fee, would have been effective. Defendants offered twice to establish a payment

plan so that plaintiff could afford the fee.[22] And plaintiff stated that she could have paid the fee had it been broken out into installments.[23] Thus, plaintiff has not established that a waiver of the fee is necessary to afford her equal opportunity to use and enjoy the dwelling.

Regarding the third element, the reasonableness element, the burden is again on the plaintiff to show that the requested accommodation is reasonable. *See Elderhaven, Inc. v. City of Lubbock, Tex.*, 98 F.3d 175, 178 (5th Cir. 1996) (holding that a plaintiff, and not a defendant, bears the burden of proof on the question of reasonableness). When considering the reasonableness of a generally applicable fee, a court should consider factors such as "the amount of fees imposed, the relationship between the amount of fees and the overall housing cost, the proportion of other tenants paying such fees, the importance of the fees to the landlord's overall revenues, and the importance of the fee waiver to the handicapped tenant." *California Mobile Home Park Mgmt. Co. I*, 29 F.3d at 1417; *see also United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1381 (9th Cir. 1997) ("*California Mobile Home Park Mgmt. Co. II*") ("Each of the factors we

---

[22]    R. Doc. 26-2 at 4; R. Doc. 26-10 at 1.
[23]    R. Doc. 79-5 at 131.

discussed [in *California Mobile Home Park Mgmt. Co. I*] is relevant to the balancing of interests inherent in any 'reasonableness' determination.").

The Court finds that plaintiff failed to demonstrate a genuine issue of material fact on the issue of reasonableness.  Turning to the factors outlined above, the animal fee imposed was a one-time payment of $400.[24]  The overall housing cost was $910 a month for a term of fifteen months.[25]  That makes the fee a little under three percent of the total cost of housing.  Though plaintiff provided evidence of defendants' current assets and how much defendants have collected in security deposits,[26] plaintiff did not provide any information about the importance, or lack thereof, of the *animal fee* to the landlord's overall revenue.  Plaintiff provided no evidence on the number of other tenants paying the fee, and plaintiff submitted no evidence that the fee has an unequal impact on or was designed to wrongly target handicapped individuals.  Animal fees are relatively typical for leased apartment buildings in which animals are allowed.

Additionally, plaintiff failed to establish the importance of the fee waiver to her.  While being able to have an ESA may be a reasonable

---

[24]    R. Doc. 26-5 at 1.

[25]    *Id.* at 1–2.  Rent was $870 a month, and water and gas were $40 a month.  *Id.* at 1.

[26]    R. Doc. 79-1 at 15; R. Doc. 86-1 at 13; R. Doc. 79-11.

accommodation, *see, e.g.*, *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1289 (11th Cir. 2014), permission to have an ESA is not at issue here, because defendants' apartment complex allows for plaintiff to have an animal with a fee. The requested accommodation is the waiver of the animal fee, and plaintiff must demonstrate the importance of the fee waiver. While she maintains that she had some financial difficulties, plaintiff stated that she could have afforded the animal fee.[27] Specifically, defendants offered plaintiff a payment plan, where she did not have to pay the entirety of the fee all at once. Plaintiff stated that she could have made incremental payments and been able to afford the fee over time.[28]

Based on a fact-specific inquiry of the generally applicable fee at issue and the highlighted factors, the Court holds that plaintiff also failed to create a genuine issue of material fact as to the reasonableness of the animal fee waiver.

Plaintiff relies on agency interpretations of the FHAA to demonstrate that the request was necessary and reasonable, but these agency interpretations do not change the Court's analysis. Plaintiff relies on the U.S. Department of Housing and Urban Development's ("HUD") Notice on

---

[27]   R. Doc. 79-5 at 131.
[28]   *Id.* at 131.

Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act.[29]  The United States Supreme Court has clarified that it is the role of the courts, not agencies, to "interpret constitutional and statutory provisions." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 392 (2024) (quoting 5 U.S.C. § 706); *Van Loon v. United States Dep't of the Treasury*, 122 F.4th 549, 562 (5th Cir. 2024) (holding that the Supreme Court overruled *Chevron* and "eliminated the 'judicial invention' of deference to administrative action and rulemaking"). Therefore, plaintiff's cited agency interpretation—which was not derived from formal adjudication or notice-and-comment rulemaking—are "'entitled to respect,' under [*Skidmore*] only to the extent that [they] have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 n.3 (6th Cir. 2011) (clarifying that the Joint Statement, discussed below, is a policy statement that warrants *Skidmore* deference, not an authoritative interpretation of the statute).  As a result, the weight of the agency's interpretation "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all

---

[29]    R. Doc. 79 at 13–14.

those factors which give it power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

HUD's Notice is unpersuasive. The Notice provides that a housing provider may not charge a fee or deposit for service animals or other assistance animals, even though it may do so for other pets in its discretion. U.S. Dep't Hous. & Urb. Dev., FHEO Notice: FHEO-2020-01, Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act 3, 3 n.8, 14 (Jan. 28, 2020) [hereinafter "Notice"]. This Notice suggests that fees are disfavored in every instance, regardless of how reasonable or proportional the fee may be or of the circumstances of the person with a disability. The authorities it cites to in support of this assertion are unconvincing. The first cited authority is the HUD and the U.S. Department of Justice's ("DOJ") Joint Statement on Reasonable Accommodations Under the Fair Housing Act. This Joint Statement provides that "[h]ousing providers may not require persons with disabilities to pay extra fees or deposits as a condition of receiving a reasonable accommodation," and it provides two examples of such behavior. U.S. Dep't of Hous. & Urb. Dev. & U.S. Dep't of Just., Joint Statement on the Reasonable Accommodations Under the Fair Housing Act 9–10 (May 17, 2004) [hereinafter "Joint Statement"]. Though the Joint Statement was issued

16

fourteen years ago and is consistent with the Notice, which factor positively under the *Skidmore* analysis, the Joint Statement does not provide thorough reasoning in its interpretation or offer any explanation or authorities for its cursory statement regarding the payment of fees.  Additionally, HUD stated that it "does not intend to imply that the Joint Statement is independently binding statutory or regulatory authority.  HUD understands it to be subject to applicable limitations on the use of guidance."  Notice at 4 n.8.  The Joint Statement is unpersuasive under *Skidmore* because its consideration is not thorough, and it presents no reasoning to evaluate.  *Cf. Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018) (finding the Joint Statement unpersuasive on a different point, because of its lack of thorough reasoning).

The Notice also cites two cases that quote the Joint Statement in their opinions, in support of the proposition that the Joint Statement is persuasive to courts: *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277 (11th Cir. 2014), and *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp.2d 307 (E.D.N.Y. 2012).  Neither of these cases quotes the portions of the Joint Statement relating to animal fees or even deals with an animal fee.  *See Bhogaita*, 765 F.3d at 1286, 1287; *see also Sinisgallo*, 865 F. Supp. 2d at 315, 321, 336, 338.  Both are unpersuasive in establishing the point at issue.  Just

because the Joint Statement or Notice may be convincing on other topics does not make the entire document influential. The final case the Notice cites in support of its animal fees assertion is *Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt.*, 778 F. Supp.2d 1028 (D. N.D. 2011). This case referred to the Joint Statement with no discussion of its persuasive authority and merely restated its brief conclusion. *Id.* at 1040. The Joint Statement was not necessary to the matter before that court, which was whether a landlord must treat those with assistance animals for mental disabilities (who were charged a fee) the same as those with assistance animals for physical disabilities (for whom the fee was waived). *Id.* at 1039, 1032 (emphasis added). Ultimately, the court found that there was an outstanding "fact[ual] question regarding whether the requested accommodation [was] necessary to afford equal opportunity to use and enjoy" the apartment. *Id.* at 1039. That case is distinguishable from this one because some disabled individuals were treated differently from others, whereas all individuals are treated the same here under the generally applicable animal fee.

Plaintiff cites to another case for her case-in-chief and to demonstrate that courts regularly cite to the Joint Statement's guidance related to animal fees, *Intermountain Fair Hous. Council v. CVE Falls Park, L.L.C.*, No. 2:10-CV-00346-BLW, 2011 WL 2945824 (D. Idaho July 20, 2011). This case is

18

similarly unpersuasive.  That court likewise quoted the Joint Statement as if it were binding, *id.* at *5, and then improperly cited to *Chevron* to describe the deference a court should give to the Joint Statement, *id.* at *6. Interpretations like joint statements and notices are given *Skidmore* deference.  *See Christensen*, 529 U.S. at 587; *see also Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1286 (11th Cir. 2014) (noting that the Joint Statement receives *Skidmore* deference, not *Chevron*-style deference).  Additionally, the U.S. Supreme Court overruled *Chevron* and "eliminated the 'judicial invention' of deference to administrative action and rulemaking" in *Loper Bright v. Raimondo.  Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 562 (5th Cir. 2024).  Therefore, the deference afforded to the Joint Statement in *Intermountain Fair Housing Council* is improper to afford today.  The Court is not swayed by these two district court cases, which contain no analysis of the Joint Statement's claims and no reasoning or determination as to its power to persuade.

Therefore, the Notice's interpretations do not contain the power to persuade and do not alter the Court's necessity or reasonableness analysis. Accommodations related to generally applicable fees must be analyzed in a "fact-specific, . . . case-by-case determination."  *California Mobile Home Park Mgmt. Co.*, 29 F.3d at 1418.  To be clear, the Court is not holding that

animal fees can always be enforced against someone with an ESA, or even that this animal fee can be enforced against every resident.  The Court holds that plaintiff here failed to establish a genuine issue of material fact as to whether the waiver of the fee was necessary and reasonable.  Because plaintiff's claims fail on the necessity and the reasonableness prongs, the Court grants summary judgment on plaintiff's reasonable accommodations claims under the FHA and LEHOA.

## B. Defendants' Breach of Contract Claims

Under 28 U.S.C. § 1367(c)(3), when federal-law claims that serve as the basis of subject matter jurisdiction are dismissed, and only state-law claims based on supplemental jurisdiction remain, a district court has broad discretion to decline jurisdiction over the remaining claims.  *See Brown v. Sw. Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990) ("[W]hen there is a subsequent narrowing of the issues such that the federal claims are eliminated and only pendent state claims remain, federal jurisdiction is not extinguished, [and] the decision as to whether to retain the pendent claims lies within the sound discretion of the district court.").  In deciding whether to hear any remaining state-law claims, courts are to "analyze the statutory and common law factors that are relevant to the question of its jurisdiction over pendent state law claims."  *Enochs v. Lampasas Cnty.*, 641 F.3d 155,

158-59 (5th Cir. 2011).  The relevant statutory factors are those found in Section 1367, including "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction."  *Id.* (citing 28 U.S.C. § 1367(c)).  The common law factors include comity, convenience, fairness, and judicial economy.  *See Parker & Parsley Petroleum v. Dresser Ind.*, 972 F.2d 580, 585 (5th Cir.1992).  The "general rule" is for courts to decline to exercise jurisdiction over remaining state-law claims when all federal claims have been dismissed prior to trial.  *Smith v. Amedisys Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002).

As to the first statutory factor, the state-law claims do not raise unresolved issues of Louisiana law—the primary dispute is an issue of fact. Therefore, that factor disfavors dismissal.  But the other three statutory factors favor dismissal because no federal claims remain, and there are no exceptional circumstances here.

On balance, the common-law factors favor dismissal as well.  The common-law factor of comity "demands that the 'important interests of federalism and comity' be respected by federal courts, which are courts of

limited jurisdiction and 'not as well equipped for determinations of state law as are state courts.'" *Enochs*, 641 F.3d at 160 (quoting *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992)). Given that only a state-law claim remains in this case, the adjudication of which would require grappling exclusively with Louisiana law, the factor of comity weighs in favor of dismissal.

The convenience factor also favors dismissal. The state court that would likely hear this matter would be the 24th Judicial District Court in Jefferson Parish. It is a more convenient forum than the United States District Court for the Eastern District of Louisiana in Orleans Parish. The underlying events occurred in Jefferson Parish, and most of the witnesses are located there. *See Enochs*, 641 F.3d at 160 ("[I]t is certainly more convenient for the case to have been heard in the Texas state court . . . where all of the parties, witnesses, and evidence were located."). Accordingly, the convenience factor favors declining jurisdiction.

As to fairness, the Court can identify no reason why a state court would be unlikely to fairly resolve the remaining claim. And, although trial is scheduled for October, courts routinely remand cases nearer to the trial date when all federal claims have been dismissed. *See, e.g., Total Ben. Servs., Inc.*

*v. Grp. Ins. Admin., Inc.*, 875 F. Supp. 1228, 1242 (E.D. La. 1995) (dismissing state law claims when trial was a couple weeks away).

The judicial economy factor is less straightforward. This case commenced over a year ago, with defendants filing the counterclaim in June 2024. Requiring defendants to re-file their claim in state court when trial is scheduled in a few months is certainly a hardship. But by the same token, only minimal adjudication of this matter has occurred. This is the first time the Court considered case-dispositive motions, and the Court has not yet considered the merits of defendants' state-law claim, which can be readily handled by a state court. On balance, the Court finds that this factor is neutral.

Three of the four statutory factors weigh in favor of declining to exercise pendent jurisdiction, and, on balance, the common-law factors favor declining jurisdiction. The Court thus finds no reason to depart from the "general rule" that federal courts should decline to exercise jurisdiction over the remaining state-law claim when all federal claims have been dismissed prior to trial. *Smith*, 298 F.3d at 446–47; *cf. Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302, 307–08 (5th Cir. 1991) (holding that a district court abused its discretion after it dismissed a case on the eve of trial after it had been litigated for four years, consuming hundreds of court hours and

producing twenty-three volumes and thousands of pages of record consisting of over 100 depositions, 200,000 pages of discovery, and a pretrial order exceeding 200 pages).   The Court dismisses defendants' state-law claims without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motions for summary judgment on plaintiff's Fair Housing Act and the Louisiana Equal Housing Opportunity Act claims and DISMISSES WITH PREJUDICE plaintiff's 42 U.S.C. § 3604(f)(3)(B) and La. Rev. Stat. § 51:2606(A)(6)(a)(ii) claims.  The Court DISMISSES WITHOUT PREJUDICE defendants' state-law claims.

New Orleans, Louisiana, this ___16th___ day of July, 2025.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE